IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
DANVILLE DIVISION

| | |
|---|---|
| EAST TENNESSEE NATURAL GAS CO., | ) ) Case No. 4:02-CV-00104 |
| Plaintiff, | ) ) ) **MEMORANDUM OPINION** |
| v. | ) ) |
| 7.74 ACRES IN WYTHE COUNTY, VIRGINIA, HAROLD HART, LARRY BALL, et al., | ) By: Jackson L. Kiser ) Senior United States District Judge ) ) |
| Defendants. | ) |

Before me is the Plaintiff's *Motion for a New Trial or in the Alternative for Remittitur*. For the reasons stated below, I find that the jury's verdict in this case was supported by the evidence presented at trial. The jury's award of $1,875,986.00 to the Defendants as just compensation for the easement taken by the Plaintiff was therefore not against the clear weight of evidence. Consequently, I will **deny** the Plaintiff's *Motion for a New Trial or in the Alternative for Remittitur*.

**I.     PROCEDURAL HISTORY**

The five-day jury trial in this case was held before this Court from Monday March 13, 2006 through Friday March 17, 2006 in Roanoke, Virginia. A *Judgment* in this case was entered on March 21, 2006 on the jury's verdict which awarded $1,875,986.00 to the Defendants as just compensation for the easement taken by the Plaintiff. East Tennessee Natural Gas ("Plaintiff") filed a *Motion for a New Trial or in the Alternative for Remittitur* on April 4, 2006. The Defendants filed a *Response in Opposition* on April 18, 2006, and the Plaintiff filed a *Reply* on April 25, 2006. A hearing was be held before this Court on the Plaintiff's *Motion* on May 8,

2006 in Roanoke, Virginia. The Plaintiff's *Motion* is now ripe for judgment.

## II. STATEMENT OF FACTS

The single issue before the jury at trial in this case was the value of just compensation due the Defendants as a result of the Plaintiff's condemnation of their property for purposes of installing a natural gas pipeline.

At trial, the Defendants called the Wythe County Administrator Cellell Dalton to testify. Dalton testified that the highest and best used for the subject property in this case before the taking was for commercial development. Appraisers hired by the Defendants, Dennis Gruelle and Frank Porter, testified to the same opinion as Dalton. Dalton testified that the Defendants were approached about marketing their property for commercial development in 2001. Dalton claimed that Wythe County's marketing efforts resulted in a major developer narrowing its choice for location down to the Defendants' property and a similar site in West Virginia that was ultimately chosen. Dalton admitted that negotiations did not progress beyond general discussion, and Dalton also testified about the high costs that would be required to develop the Defendants' property for commercial use. Dalton further testified that a corporation did recently choose to locate on a site in Wythe County of more than 100 acres instead of locating in Northern Virginia.

The Defendants also called engineer John Fowler as a witness at trial. Fowler testified without objection that on/off ramps at the intersection of state route 629 and interstate 77 could be installed at feasible cost. Fowler testified that such ramps could provide access to the Defendants' property making it suitable for commercial or industrial development before the taking. Fowler also testified that the taking deemed the Defendants' property unsuitable for commercial or industrial development because an access road could not be built over the pipeline

easement. To come to his conclusion, Fowler allegedly relied upon construction alignment sheets, topographical maps, and viewed the video shown at trial.

The Defendants relied on the testimony of appraisers Dennis Gruelle and Frank Porter to establish a value for the Defendants' property before and after the taking. Porter relied upon three industrial sales to establish his appraisal. The sales on which Porter relied were located in the Virginia counties of Rockingham, Warren, and Wythe. Porter reduced the values of the three properties by 52%, 66%, and 75% to make them comparable to the Defendants' property for the purpose of establishing a value for the Defendants' property before the taking. In valuing the Defendants' property for commercial use, Porter assumed that the property would be made accessible to the interstate by the construction of interstate ramps that do no currently exist. Porter testified that the Defendants' property was limited to agricultural or residential use after the taking because of the installation of the pipeline. Porter relied upon sales from Wythe County to calculate his appraisal of the value of the Defendants' property after the taking.

Dennis Gruelle used five sales of property with commercial or industrial uses to establish a value for the Defendants' property before the taking. The first sale is the same one used by Porter from Rockingham County, Virginia. The second, third, and fourth sales are all between 16.7 and 33.0 acres in size; the Defendants' property consists of 377.59 acres. The fifth sale is the same one used by Porter from Wythe County, Virginia. Two of the sales relied upon by Gruelle were sold for construction of convenience stores or truck stops; undisputed evidence at trial showed that the Defendants' property was unsuitable for such use. Gruelle reduced the values of the five properties by 55%, 85%, 55%, 35%, and 60% in order to establish a value for the Defendants' property before the taking.

The Plaintiff called appraiser Warren Klutz who testified at length about the improper application of professional appraising standards employed by Porter and Gruelle. Klutz did not appraise the Defendants' property, did not visit it, did not review the files prepared by Porter or Gruelle, and did not talk to any of the parties involved in any of the transactions on which Porter and Gruelle based their calculations. Klutz testified that neither appraiser provided sufficient data or evidence to support his conclusion that the highest and best use of Defendants' property before the taking was for commercial or industrial development. Klutz opined that the highest and best use was agricultural or residential, as evidenced by the "after" value comparable sales used by both Porter and Gruelle. Klutz's testimony regarding the failure of Porter and Gruelle to comply with professional standards of appraisal practice was not challenged on cross-examination or with any rebuttal evidence other than each man's own testimony that he had complied with the standards.

The Plaintiff also called appraiser James Johnston as a witness. Johnston testified that the real estate market in Wythe County does not recognize damage to the Defendants' entire parcel because of the installation of the pipeline. Johnston also testified that the highest and best use of the Defendants' property both before and after the taking was for residential or agricultural purposes. Additionally, the Plaintiff offered testimony and a photograph from John Harris to illustrate that the property outside of the easement on the Defendants' property could be developed.

### III. LEGAL STANDARD

Rule 59(a) of the *Federal Rules of Civil Procedure* gives the Plaintiff the legal right to bring its *Motion* before this Court. Rule 59(a) states:

A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States.

In *Aetna Casualty v. Yeatts*, the Fourth Circuit established the standard for deciding whether a new trial should be granted:

On a motion for a new trial, it is the duty of the judge to set aside the verdict and grant a new trial, if he is of the opinion that the verdict is against the clear weight of the evidence, or is based upon evidence which is false, or will result in a miscarriage of justice, even though there may be substantial evidence which would prevent the direction of a verdict. 122 F.2d 350, 352 - 353 (4th Cir. 1941).

As an alternative to granting a new trial, federal courts have a long-standing practice of resolving excessive verdicts by offering the plaintiff a choice between granting a motion for a new trial and denying the motion upon the acceptance by the plaintiff of a remittitur in a stated amount. *See, G.M. Garrett Realty v. Century 21*, 17 Fed. Appx. 169, 172 - 173 (4th Cir. 2001).

When a reviewing Court concludes that a verdict is excessive because insufficient evidence supports that verdict, it is that court's duty to require a remittitur or order a new trial. *See, Cline v. Wal-Mart Stores*, 144 F.3d 294, 305 (4th Cir. 1998). Additionally, remittitur is appropriate in condemnation actions. *See, U.S. v. Certain Parcels of Land*, 149 F.2d 81 (5th Cir. 1945).

## IV.     DISCUSSION

In its *Memorandum in Support of its Motion*, the Plaintiff argues that: 1) the jury's award is beyond the limits of reasonableness and fairness; 2) the jury's award is excessive and shows passion, prejudice, and caprice; 3) the jury's award is against the clear weight of the evidence; 4) the jury's award will result in a miscarriage of justice; and 5) this Court erred in admitting the testimony of Frank Porter and Dennis Gruelle.

-5-

The Plaintiff first argues that the jury's award in this case is against the clear weight of evidence and is excessive. The Plaintiff argues that the Defendants' entire case revolved around one key fact – that in 2002 a representative looked at their property as a potential site for commercial development. The Plaintiff claims that the Defendants then concluded, without any market data, that their property's highest and best use was for commercial or industrial development. The Plaintiff simply argues that the Defendants offered no evidence that it was financially feasible to develop their property as industrial or commercial property. The Plaintiff alleges that the Defendants' appraisers then selected sales of industrial or commercial property to create an excessive value of the Defendants' property before the taking. The Plaintiff further argues that the Defendants' witnesses wrongly concluded that the highest and best use of the Defendants' land after the taking changed to agricultural or residential. The Plaintiff claims that the undisputed evidence at trial was that commercial development could still occur on the property. That is, the Plaintiff argues that even if the highest and best use of the Defendants' property could be categorized as commercial or industrial before the taking, which the Plaintiff obviously disputes, the evidence does not support a switch to agricultural or residential use for a highest and best use after the taking. The Plaintiff concludes that the great weight of evidence in this case shows that residential or agricultural use is the highest and best use of the Defendants' property both before and after the taking.

I disagree with the Plaintiff's assertion that insufficient evidence was presented at trial to establish that the highest and best use for the Defendants' property before the taking was for commercial or industrial development. As stated above, Wythe County Administrator Cellell Dalton testified that Wythe County had marketed the Defendants' property, however

-6-

Case 4:02-cv-00104-JLK    Document 130    Filed 05/26/06    Page 6 of 11    Pageid#: 398

aggressively, for commercial and/or industrial development. Dalton further testified that one corporation considered the Defendants' property as a potential site for commercial development. Cellell Dalton's testimony served as evidence that the highest and best use of the Defendants' property before the taking was for commercial or industrial development. I consider Dalton an independent witness with no ties to either side.

As stated above, John Fowler also testified for the Defendants. Fowler stated that ramps could have been readily built along Interstate 77 at a feasible cost to help make the Defendants' property accessible to the Interstate for purposes of commercial development before the taking. Fowler further testified that after the taking, a road sufficient to support commercial development could not be built over the pipeline easement on the Defendants' property. Fowler's testimony served as evidence that the highest and best use of the Defendants' property before the taking was for commercial or industrial development, and that the highest and best use of the Defendants' property after the taking was for residential or agricultural purposes.

While the Plaintiff may have offered evidence through its witnesses to contradict the testimony of the Defendants' witnesses, it was within the jury's discretion to judge the credibility of all the witnesses in determining the amount of just compensation to award the Defendants. I have ruled, when asked, on the admissibility of evidence presented to the jury by both sides in this case; that was the extent of my role in judging the evidence in this case. It was the jury's decision to weigh the credibility of the evidence presented by both sides in this case. It was completely within the jury's discretion in this particular case to rely more heavily on the evidence presented by the Defendants than the evidence presented by the Plaintiff. The jury's decision to do so does not provide justification for me to grant the Plaintiff's *Motion for a New*

-7-

Case 4:02-cv-00104-JLK   Document 130   Filed 05/26/06   Page 7 of 11   Pageid#: 399

*Trial* in this case.

The Plaintiff next argues that the jury verdict is beyond the limits of reasonableness and fairness in this case. The Plaintiff asserts that if the jury's award is allowed to stand it would result in a miscarriage of justice because it fails to provide for uniformity of awards to landowners along the Plaintiff's Patriot Project. The Plaintiff contends that one reason this Court originally appointed a land commission to resolve remaining just compensation disputes related to its Patriot Project was to ensure fairness to the landowners across the Project. The Plaintiff further contends that fairness to all landowners should not vanish simply because each case is tried to a different jury. The Plaintiff suggests that this Court should step in and reject this particular verdict based upon a consideration of fairness across the project and between the multiple landowners affected. The Plaintiff points out that to date six jury trials have been held and no landowner has received an award greater than $135,800 regardless of the size of the acreage taken by the Plaintiff. The Plaintiff argues that fairness in this case dictates that this Court should at least reduced the award in this case.

The Plaintiff concludes that a clear miscarriage of justice will result in this case if the Court refuses to either grant the Plaintiff's request for a new trial or request for a reduction of the jury's just compensation award. I disagree. While all the cases involving land owners along the Plaintiff's Patriot Project involve some of the same issues, all the cases are distinct. All of the cases deal with property having a distinct acreage, a distinct shape, distinct natural attributes, distinct man-made attributes, and a distinct highest and best use. Each case has involved different owners, different witnesses, different comparable sales, and perhaps most importantly different juries. The fact that the verdict returned in this case for the Defendants is exponentially

-8-

higher than the just compensation ultimately paid by the Plaintiff to other landowners whose land was taken by the Plaintiff along its Patriot Project, does not alone represent a miscarriage of justice or provide grounds for me to grant the Plaintiff's *Motion for a New Trial* or *in the Alternative for Remittitur*.

Finally, the Plaintiff argues that the opinions of the Defendants' expert appraisers, Porter and Gruelle, failed to meet the criteria established in Rule 702 of the *Federal Rules of Evidence* and espoused in *Daubert v. Merrell,* 509 U.S. 579 (1993). The Plaintiff therefore argues that the opinions of Porter and Gruelle were wrongly deemed admissible by this Court. The Plaintiff points out that the standard set out in Rule 702 requires that proffered testimony be the "product of reliable principles and methods" and requires that the "witness has applied the principles and methods reliably to the facts of the case." The Plaintiff argues that these standards were not met in this case.

The Plaintiff entered a *Motion in Limine* to exclude the testimony of Porter and Gruelle on March 10, 2006. Oral argument on the Plaintiff's *Motion in Limine* was held just before trial on March 13, 2006. On March 14, 2006, this Court entered an *Order* denying the *Motions* made by the Plaintiff to exclude the testimony of Porter and Gruelle. I stated on the record during the oral argument on the *Motions in Limine* that the testimony of Porter and Gruelle met the standards established by Rule 702 and espoused in *Daubert*. At that time, I was not sitting as the trier-of-fact attempting to weigh the credibility of the challenged testimony; instead, it was my job as the Judge in this case to determine whether the testimony was admissible. My role in this case remains unchanged at this juncture. I continue to maintain that the challenged testimony was admissible, and at this point in this case it is not my role to question the weight ultimately

-9-

Case 4:02-cv-00104-JLK   Document 130   Filed 05/26/06   Page 9 of 11   Pageid#: 401

placed on that testimony by the jury.

An objection to a ruling in a *Motion in Limine* is not appropriately made in a *Motion for a New Trial* or in a *Motion for Remittitur*. No new reasons arose during trial for excluding the testimony of Porter or Gruelle, and the Plaintiff has not articulated any reasons in addition to those it expressed in its *Motion in Limine*. Therefore, I stand by my decision to deny the Plaintiff's *Motion in Limine*, and I can find no reason why that decision would be grounds for granting the Plaintiff's instant *Motion for a New Trial* or *in the Alternative for Remittitur*.

When a reviewing Court concludes that a verdict is excessive because insufficient evidence supports that verdict, it is that court's duty to require a remittitur or order a new trial. *See, Cline v. Wal-Mart Stores*, 144 F.3d 294, 305 (4th Cir. 1998). Having stated above that the Plaintiff's *Motion for a New Trial* will be denied because sufficient evidence did support the jury's verdict in this case, I will also deny the Plaintiff's alternative *Motion for Remittitur* for the same reason.

## V. CONCLUSION

For the reasons stated above, I find that the jury's verdict in this case was supported by the evidence presented at trial. The jury's award of $1,875,986.00 to the Defendants as just compensation for the easement taken by the Plaintiff is therefore not against the clear weight of evidence. Consequently, I will **deny** the Plaintiff's *Motion for a New Trial or in the Alternative for Remittitur*.

The clerk is directed to send a copy of this *Memorandum Opinion* and the accompanying *Order* to all counsel of record.

Entered this 26th day of May, 2006.

s/Jackson L. Kiser
Senior United States District Judge